IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MATTHEW TROY EVANS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

\*    \*    \*    \*    \*    \*    \*

CIVIL NO.: WDQ-11-1336
CRIMINAL NO.: WDQ-05-0259

\*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Pending is Matthew Troy Evans's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, the § 2255 motion will be granted in part and denied in part.[1]

I. Background

In November 2004, Evans was under surveillance by Baltimore City police, who suspected him of robbery and homicide. Eric Hufham Test., Trial Tr. 84:8-9, March 26, 2007. Detectives had

---

[1] Evans's motion for more time to file his § 2255 motion (ECF No. 60) will be denied as moot. Evans has also filed a motion for copy work seeking a copy of his supplemental memorandum in support of his § 2255 motion. *See* ECF No. 71. Because Evans's request appears reasonable, the Court will grant the motion. *See Lyle v. United States*, Case No. JFM-09-727, 2009 WL 901523, at *2 (granting motion for copy work seeking defendant's first motion to vacate and the Court's order dismissing the motion to vacate, because the request for copy work "appear[ed] reasonable").

learned that Evans lived at 5308 Hamilton Avenue in Baltimore County, drove a 1999 Mitsubishi Galant with a non-working taillight, and had a suspended driver's license.  Christopher Talley Test., Trial Tr. 16:23-18:6, 22:9-12, March 27, 2007.

Around 2:30 p.m. on December 1, 2004, Detectives Craig Street and Michael DeFranco saw the Galant being driven slowly down the 2200 block of Prentiss Place; it stopped when someone called out Evans's nickname.  Michael DeFranco Test., Trial Tr. 22:1-23:25, March 28, 2007.  The car continued westbound on Prentiss Place then turned right onto Collington Avenue.  Id. DeFranco used his police radio to alert other officers that he had seen the Galant.  Christopher Talley Test., Trial Tr. 19:18-23, March 27, 2007.

Soon after, Detective Christopher Talley saw Evans driving the Galant south on Patterson Park Avenue.  Christopher Talley Test., Trial Tr. 20:2-15, March 27, 2007.  Because Detective Talley was in an unmarked car and not in uniform, he radioed other police to stop the Galant.  Id. 20:18-21:18.  Officer Eric Hufham, who was in a marked patrol car near Patterson Park Avenue and Monument Street, agreed to make the traffic stop. Eric Hufham Test., Trial Tr. 117:4-24, March 27, 2007.

Officer Hufham saw the Galant traveling eastbound on Monument Street, pulled behind it, and turned on his patrol car's lights and siren.  Eric Hufham Test., Trial Tr. 118:4-6,

March 27, 2007.  The Galant "took off" and turned south onto Luzerne Avenue.  *Id*. 118:6-8.  Officer Hufham followed the Galant for many blocks as it sped at more than 50 mph and ran stop signs.  *Id*. 118:11-15.  When the Galant began to turn right onto East Baltimore Street, Officer Hufham decided to turn right on Fairmount Avenue, a block north, so that he could drive parallel to the Galant and stop it at another intersection.  *Id*. 119:4-12.  As the Galant crossed Baltimore Street, it collided with a taxi driven by Onyama Njikomya.  Onyama Njikomya Test., Trial Tr. 109:13-16, March 27, 2007.

Evans and his passenger, Willie Jones, Jr., leapt from the car and ran into an alley behind East Baltimore Street.  Bryan Morgan Test., Trial Tr. 149:2-3, March 27, 2007.  Bryan Morgan, a construction worker, saw one of the men running toward Rose Street, remove a hooded sweatshirt, exposing a bulletproof vest.  *Id*. 149:20-150:5.  Detective Michael Johnson, one of the officers who had been investigating Evans, saw the same and identified the fleeing suspect as Evans.[2]

Officer Stephen Jacobs had heard of Evans's flight on his radio and was driving west on Fairmount Avenue, near Luzerne Avenue.  Stephen Jacobs Test., Trial Tr. 131:16-132:19, March

---

[2] Michael Johnson Test., Trial Tr. 196:16-24, March 27, 2007. Detective Johnson had driven to the alley after hearing on his radio that Evans had refused to stop for Officer Hufham.  *Id*. 195:7-17.

27, 2007.  As he continued down Fairmount Avenue, Officer Jacobs saw a man in an alley behind Luzerne Avenue and called for backup.  *Id.* 132:19-133:10.  A second officer arrived and helped him arrest the man, who was Evans's passenger, Jones. Christopher Talley Test., Trial Tr. 37:9-10, March 27, 2007.

Detective Talley parked his car at the intersection of Luzerne and Fairmount Avenues, saw the two officers arresting Jones, and spotted Evans quickly walking eastbound on Fairmount Avenue.  Christopher Talley Test., Trial Tr. 30:4-10, March 27, 2007.  Evans, wearing a white T-shirt, entered a house under construction on Fairmount Avenue.  *Id.* 30:13-25; 83:15-17. Sergeants Mike Guzman and Mike Johnson found Evans in the basement of the house and arrested him.  *Id.* 30:24-31:15.

Detective Jamal Harris had parked his car and walked to the accident scene.  Jamal Harris Test., Trial Tr. 230:7-14, March 27, 2007.  Trying to retrace Evans's path, Detective Harris walked into the alley behind Rose Street.  *Id.* 230:19-25.  There he saw a black Stilleto brand bulletproof vest hanging on an otherwise empty clothesline.  *Id.* 231:3-7; Christopher Talley Test., Trial Tr. 34:22-24, March 27, 2007.  Although it had rained that day, the bulletproof vest was dry.  Christopher Talley Test., Trial Tr. 35:23-36:1.

After Evans and Jones were arrested, Detective Talley organized a search of the alleys.  Christopher Talley Test.,

4

Trial Tr. 34:7-8, March 27, 2007.  In the alley behind the 2500 block of East Baltimore Street, police found an S.W.D. model Cobray MAC-11 9mm assault pistol, a magazine from the gun, and 27 cartridges.  *Id.* 34:9-17; Christy Silbaugh Test., Trial Tr. 40:7-10, March 28, 2007.  The gun had a deep scratch on the back side of the stock, as if it had struck concrete or a hard object.  Christopher Talley Test., Trial Tr. 35:1-6.  Although it had rained earlier in the day, the weapon was dry.  *Id.* 35:10-15.  Police found two additional cartridges in the middle of Rose Street.  *Id.* 34:15-17.  The 29 cartridges were made by four different manufacturers.  Alan Boroshok Test., Trial Tr. 98:17-20, March 28, 2007.

Sometime after 9:15 p.m. that day, police executed a search warrant at Evans's home in Baltimore County.  Latarsha Griffin Test., Trial Tr. 79:17-20, March 28, 2007; Alan Boroshok Test., Trial Tr. 95:15-18, March 28, 2007.  In a small closet full of men's clothing, police found a box with nine 9mm cartridges inside the pocket of a sweatshirt.  Alan Boroshok Test., Trial Tr. 103:7-21.  Four of the cartridges were made by the manufacturers of many of the bullets found in the alleys earlier that day.  *Id.* 105:1-9.  On the closet floor, police found a carrying bag and vest cover for a Stilleto brand bulletproof vest.  *Id.* 106:1-3.  Evans's girlfriend, who lived with Evans, told police that the closet was his.  *Id.* 107:5-12.

5

On June 2, 2005, Evans was indicted for unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of body armor by a person previously convicted of a crime of violence, in violation of 18 U.S.C. § 931. ECF No. 3; ECF No. 43 at 1; Trial Tr. 21:11-19, March 30, 2007. The firearm charge was based on the Cobray-11 9mm pistol and the 9mm ammunition police found in the alley behind East Baltimore Street. Trial Tr. 21:13-15. On January 18, 2007, a superseding indictment charged Evans with an additional count under § 922(g)(1) for possession of ammunition by a felon. ECF No. 43 at 1. This count was based on the cartridges found in Evans's closet. Trial Tr. 2:20-23, March 30, 2007.

Evans's trial began on March 26, 2007. The evidence included the testimony of the officers involved in the surveillance and pursuit of Evans, and the subsequent searches; taxi driver Njikomya; and construction worker Morgan.

On March 28, 2007, the parties stipulated that Evans "was convicted in a court of law of escape from confinement and sentenced to incarceration for a term of 45 days." Trial Tr. 179:20-23, March 28, 2007. "As a result of such conviction," Evans was prohibited under 18 U.S.C. § 931 from "purchasing, owning, or possessing body armor on December [1], 2004." *Id.* 179:23-180:2. The parties also stipulated that Evans "had been convicted of a crime punishable by imprisonment for a term

6

exceeding one year, as defined in 18 U.S.C. § 921, and his civil rights had not been restored." *Id.* 180:6-12.

At the close of evidence, the Court instructed the jury -- over defense counsel's objections -- that an element of unlawful possession of body armor was a prior conviction for a crime of violence.[3] In its closing argument, the Government told the jury that Evans "knew that he was prohibited under the law from . . . having body armor." Trial Tr. 6:1-2, March 30, 2007. The Government pointed out that Evans had stipulated that he had been convicted of escape, a crime of violence, which established the first element of unlawful possession of body armor. *Id.* 22:15-21. Evans's attorney did not mention the escape conviction in his closing argument. *See id.* 24-65.

On April 3, 2007, the jury convicted Evans on all counts. ECF No. 34.

At sentencing on October 19, 2007, then District Judge Andre M. Davis found that Evans was an armed career criminal[4] based on four prior convictions:

---

[3] *See* Trial Tr. 128:14-131:7, March 29, 2007. Because Evans had stipulated that he had been convicted of a crime of violence, defense counsel argued that the Court should tell the jury only that he had been convicted of escape and sentenced to 45 days. *Id.* The Court said it would be improper to "refus[e] to tell the jury the language that Congress chose," and told counsel he could refer to the details of the crime in closing. *Id.* at 130:1-3.

[4] An offender is an armed career criminal and subject to an

(1)   the 1987 state escape conviction mentioned in the
      stipulation at trial;

(2)   a 1994 federal conviction for conspiracy to possess with
      intent to distribute cocaine;

(3)   a 1994 state conviction for possession of heroin with
      intent to distribute[5]; and

(4)   a 2001 state conviction for conspiracy to distribute
      cocaine.

Sentencing Tr. 68:20-69:5, Oct. 19, 2007; PSR ¶¶ 35, 39-43.

   The 1994 convictions were about five months apart. *See* PSR
¶¶ 39, 41. The federal conviction arose out of an investigation
by the Drug Enforcement Administration and the Baltimore City
and County police departments that started in spring 1991. *Id.*
¶ 42. Wiretap evidence showed that Evans had conspired to --
and did -- obtain cocaine and heroin from three other drug
traffickers. *Id.* On one occasion, Evans was to transport two
kilograms of cocaine from Louisiana to Baltimore. *Id.* In April

---

enhanced sentence under the U.S. Sentencing Guidelines if he
violates 18 U.S.C. § 922(g) and "has three previous convictions
. . . for a violent felony or serious drug offense, or both,
committed on occasions different from one another.". *See* 18
U.S.C. § 924(e)(1); U.S. Sentencing Guidelines Manual 4B1.4.

[5] The presentence report ("PSR") lists the crime as "possession
with intent to manufacture/distribute" but does not specify the
drugs involved. *See* PSR ¶ 39. Evans describes the crime as
"possession with intent to distribute heroin." Mem. in Supp. of
Mot. to Vacate 18.

1992, a federal grand jury indicted Evans on a drug conspiracy charge, but he was not arrested until January 28, 1993.[6]  Evans pled guilty to violating 21 U.S.C. § 846, and on June 17, 1994, he was sentenced to 84 months imprisonment followed by four years of supervised release.  *Id.* at ¶ 41.

The 1994 state conviction arose out of an investigation of a Baltimore City stash house.  PSR ¶ 40.  On January 6, 1993, employees of a property management company alerted police after finding drugs, paraphernalia, a gun, and a large amount of money inside an apartment.  *Id.*  Baltimore City police stopped Evans as he left the apartment, found him carrying about $950, and arrested him.  *Id.*  Police searched the apartment and found a 9mm Uzi and ammunition, empty gelatin capsules, a scale with drug residue, quinine, strainers, a spoon, and $930.  *Id.*  Evans pled guilty to possession of heroin with intent to distribute, and on November 18, 1994, he was sentenced to 6 years imprisonment.[7]

At sentencing in this case, Evans's attorney challenged the Court's consideration of the 2001 conspiracy charge as a serious drug offense.  *See* Sentencing Tr. 17:10-38:14, 46:17-52:7, Oct.

---

[6] Mem. in Supp. of Mot. to Vacate 18; ECF No. 67 at 32.  Evans was arrested on the federal charges after his January 6, 1993 arrest on separate charges that led to the state conviction, discussed *infra*.

[7] PSR ¶ 39.  All but four years, one month, and 14 days was suspended.  *Id.*

19, 2007.  A serious drug offense includes any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," and punishable by 10 years or more in prison.  18 U.S.C. § 924(e).  The PSR noted that Evans had been sentenced to 18 months incarceration for conspiracy to distribute cocaine, but it provided no details of the offense.  PSR ¶ 43.  Thus, counsel argued that the Government had not shown that Evans was convicted of a serious drug offense because (1) Maryland law does not require an overt act to establish conspiracy, and (2) Evans's mere agreement to distribute cocaine may not have involved manufacturing, distribution, or possession of the drug. Sentencing Tr. 18:9-20:6, 22:35-23:5, 27:19-35:7, 50:7-15.

The Court rejected counsel's argument and sentenced Evans to three concurrent terms of imprisonment: 235 months for Count 1 (possession of a firearm by a felon), 36 months for Count 2 (unlawful possession of body armor), and 235 months for Count 3 (possession of ammunition by a felon).  Sentencing Tr. 50:16, 68:19-69:5; Judgment, ECF No. 43 at 2.  Evans was also sentenced to five years supervised release and assessed $100 on each count.  ECF No. 43 at 3, 5.

On January 14, 2010, the Fourth Circuit affirmed the judgment in an unpublished opinion.  *United States v. Evans*, 361 F. App'x 524 (4th Cir. 2010).  On May 17, 2010, the Supreme

Court denied Evans's petition for a writ of certiorari. *Evans v. United States*, 130 S. Ct. 3308 (2010).

On May 16, 2011, Evans moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 61. On May 27, 2011, he supplemented his motion with a second memorandum of law.[8]  On August 15, 2011, the Government opposed Evan's § 2255 motion.  ECF No. 67.  On November 10, 2011, Evans filed a reply.  ECF No. 70.

II. Analysis

Evans challenges the legality of his body armor conviction, his indictment on two counts under 18 U.S.C. § 922(g)(1), statements at trial about the nature of his prior escape conviction, and the use of certain prior convictions to enhance

---

[8] ECF No. 63.  The Government contends that the supplement is untimely, because it was filed after the one-year limitations period for a § 2255 motion. *See* ECF No. 67 at 2, 39; 28 U.S.C. § 2255(f)(1) (one-year limitation period runs from "the date on which the judgment of conviction becomes final"); *Clay v. United States*, 537 U.S. 522, 527 (2003) (finality attaches when the Supreme Court denies a petition for a writ of certiorari).  On May 17, 2010, the Supreme Court denied certiorari, and Evans did not file the supplement until May 27, 2011. *See Evans*, 130 S. Ct. 2208; ECF No. 63.  Under Fed. R. Civ. P. 15(c), however, a defendant may supplement his motion after the limitations period if the claims asserted in the amended motion are "tied to a common core of operative facts" in the original motion. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Evans has not addressed the timeliness of his supplement.  The Government did not address whether the supplement relates back, but addressed the merits of its claims. *See* ECF No. 67 at 39-43.  Accordingly, the Court will consider all Evans's claims. *See Zoa v. United States*, Case No. PJM-10-2823, 2011 WL 3417116, at *1 n.2 (D. Md. Aug. 1, 2011) (considering the merits of the defendant's § 2255 motions despite their untimeliness).

his sentence. *See* ECF Nos. 61-1, 63.  The Government argues

that Evans has procedurally defaulted many of these claims by

failing to raise them on appeal, and only one claim would

entitle Evans to relief on the merits.  *See* ECF No. 67.

A. Legality of the Body Armor Conviction

Evans argues that his prior conviction for escape from a

juvenile detention center does not qualify as a predicate "crime

of violence" under 18 U.S.C. § 931 and, thus, the Court must

vacate his conviction for unlawful possession of body armor.[9]

The Government agrees.  ECF No. 67 at 3, 14-18.

Section 931 criminalizes possession of body armor by a

person who has been convicted of a "crime of violence."  18

U.S.C. § 931.  A "crime of violence" is a felony that involves

"the use, attempted use, or threatened use of physical force,"

or "a substantial risk that physical force . . . may be used."

18 U.S.C. § 16.

When Evans was indicted and tried for unlawful possession

of body armor, courts treated any escape conviction as a violent

offense[10] under § 931 and similar provisions, such as the Armed

---

[9] Mem. In Supp. of Mot. to Vacate 3-8.  Evans further argues that
his trial attorney erred by stipulating that Evans was a person
prohibited from possessing body armor.  *Id.* at 3.  The
stipulation was not ineffective assistance of counsel.  *See*
*infra* note 10.

[10] Thus, Evans cannot show that his attorney acted unreasonably -
- and provided ineffective assistance of counsel -- by

Career Criminal Act (the "ACCA") and the career offender provision of the advisory sentencing guidelines.[11] Two years after Evans's trial, however, the Supreme Court held that a defendant's prior conviction for failing to report four times for weekend incarceration did not constitute a violent felony under the ACCA. *Chambers v. United States*, 555 U.S. \_\_, 127-31. Since then, the Fourth Circuit has held that, when a state law defines escape to include both unlawfully leaving and failing to report to custody, a conviction "does not inherently constitute a violent felony." *United States v. Bethea*, 603 F.3d 254, 255-56 (4th Cir. 2010). Mere failure to arrive at a detention hearing, for instance, would not constitute violent conduct. *Id.* at 259-60.

---

stipulating that the escape was a violent crime. *See infra* Part II.B.1 (explaining the standard for ineffective assistance of counsel).

[11] *See, e.g., United States v. Mathias*, 482 F.3d 743, 744-45 (4th Cir. 2007) (every escape qualified as a "violent felony" under the ACCA because it "involve[d] conduct that present[ed] a serious potential risk of physical injury to another"); *United States v. Stout*, Case No. 09-147-S-KKC, 2010 WL 2228351, at *1 (E.D. Ky. June 3, 2010) (before 2009, "the Sixth Circuit took the position that all escape offenses, regardless whether the conviction was for a failure to report, walkaway, or breakout, constituted 'crimes of violence'"); *United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004) ("even in a case where a defendant escape[d] from jail by stealth and injure[d] no one in the process," it qualifie[d] as a crime of violence under the advisory sentencing guidelines) (internal quotation marks omitted).

Evans asserts that his 1987 escape conviction resulted from his failure to return to the Maryland Training Center for Boys after a weekend furlough.  Mem. in Supp. of Mot. to Vacate 3-8; ECF No. 63 at 10.  The Government concedes that it lacks any information to the contrary,[12] and notes that Evans's 45-day incarceration suggests that his escape was "not particularly aggravated."  ECF No. 67 at 15.  Accordingly, the Court will vacate Evans's conviction, concurrent 36-month sentence, and $100 assessment for unlawful possession of body armor (Count Two of the superseding indictment).[13]

---

[12] Because of the age of the conviction, the charging documents are not available.  ECF No. 67 at 16.  Maryland judiciary records list the charge as "escape - from confinement" under former Md. Code 1957, Art. 27, § 139.  See Case No. 03K86006367, http://casesearch.courts.state.md.us/ (search "name" for "Matthew Troy Evans" then follow "03K86006367" hyperlink).  The statute did not define escape, and Maryland courts saw "no distinction between an escape from within prison walls and one effected when the prisoner was outside the prison area." See Meadows v. State, 239 A.2d 767, 770 (Md. Ct. Spec. App. 1968) (prisoner on work release escaped when he missed his ride back to prison and "[i]nstead of calling the institution, he just stayed there").

[13] Chambers applies retroactively.  See Narvaez v. United States, ---F.3d---, 2011 WL 6382106, at *1 (7th Cir. 2011); United States v. Shipp, 589 F.3d 1084, 1091 (10th Cir. 2009). Generally, Evans's failure to raise this argument on appeal would have barred him from raising it here.  A defendant cannot raise a claim in his § 2255 motion that he did not raise on direct appeal, unless he can show (1) cause for his default and resulting prejudice, or (2) actual innocence.  Bousley v. United States, 523 U.S. 614, 621-22 (1998).  Under Chambers and its progeny, however, Evans is actually innocent of the body armor offense.

14

B. Legality of the Two Convictions Under 18 U.S.C. § 922(g)(1)

Evans argues that his trial attorney provided ineffective assistance of counsel because he did not challenge the multiplicity of Evans's two charges under 18 U.S.C. § 922(g)(1). Mem. in Supp. of Mot. to Vacate 8-11. Evans contends that the evidence established only one offense. *Id.* The Government counters that (1) Evans has procedurally defaulted the multiplicity argument by not raising it on appeal, and (2) charging Evans with two counts was proper, because the gun and ammunition were found at different times and at separate locations. ECF No. 67 at 18-23.

1. Standard of Review for Claims of Ineffective Assistance

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Under *Strickland*, Evans must prove that counsel's performance: (1) was deficient and (2) prejudiced his defense. *Id.* at 687; *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

Deficient performance requires Evans to show that his attorney made errors so serious that the "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 686, 689. A court must be "highly deferential" in its review of an attorney's conduct, observing a "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Id.* at 689.

15

To demonstrate prejudice, Evans must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

2. Evans's Claims

Although Evans has not procedurally defaulted this claim,[14] he is not entitled to relief on the merits. "[A] defendant may be charged and prosecuted for the same statutory offense multiple times when each prosecution is based on discreet acts that each constitute a crime." *United States v. Goodine*, 400 F.3d 202, 208 (4th Cir. 2005). Thus, multiple counts of felony possession of a firearm and ammunition are appropriate when a gun and ammunition are seized "at different times and in different locations," and different evidence supports the two offenses.[15]

---

[14] The Government is correct that Evans did not raise the multiplicity argument at trial or on direct appeal, but he argues now that his trial counsel provided ineffective assistance of counsel by not raising the multiplicity issue. The failure to raise an ineffective assistance of counsel claim on direct appeal does not bar a defendant from raising that claim in a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).

[15] *Goodine*, 400 F.3d at 209 (possession of firearm and possession of ammunition were different offenses because gun was seized in defendant's kitchen trash can, the bullet was seized later at jail, and the Government used different evidence to prove each charge).

16

The evidence against Evans supported two charges under §
922(g)(1).  Count One was based on the 9 mm assault pistol and
29 cartridges that Evans discarded near Baltimore and Rose
Streets after fleeing police just after 2:30 p.m. December 1,
2004.  Trial Tr. 21:13-15; March 30, 2007.  Count Three was
based on the nine cartidges police found about six hours later
in a closet at Evans's apartment more than five miles away.  *Id.*
2:20-23.  Because the assault pistol and nine cartridges were
found at different times and places, Counts One and Three were
not multiplicitous.  *See Goodine*, 400 F.3d at 209.  Evans's
attorney did not act unreasonably -- or provide ineffective
assistance of counsel -- by not challenging the separate charges
under § 922(g)(1).  *See Strickland*, 466 U.S. at 686, 689.
Accordingly, the Court will deny Evans relief on this claim.

   C. Propriety of Statements that Evans's Escape Was Violent

      Evans argues that his convictions for unlawful possession
of a firearm and ammunition resulted from the "prejudicial
spillover" of the wrongful prosecution for possession of body
armor. Mem. in Supp. of Mot. to Vacate 11.  He contends that
the Court's jury instructions and the Government's closing
argument "unfairly tax[ed] the jury's capacity to impartial[ly]
determine" his guilt because they improperly referred to his
escape conviction as a violent crime.  *Id.* at 11-17.  He argues
alternatively that all three convictions should be vacated

17

because the Court and the Government told jurors the nature of his predicate offense under the body armor statute, in violation of the Supreme Court's holding in *Old Chief v. United States*, 519 U.S. 172 (1997). *Id.* at 12-17.

The Government counters that any prejudice resulting from mention of the escape conviction was harmless beyond a reasonable doubt. *See* ECF No. 67 at 23-24. It argues that the Court and the Government fully complied with the requirements of *Old Chief*. *Id.* 28-31.

1. Harmless Error

"[C]ommission of a constitutional error at trial alone does not entitle a defendant" to relief, because "most constitutional errors can be harmless." *See Washington v. Recuenco*, 548 U.S. 212, 218 (2006) (internal quotation marks omitted). An error is harmless beyond a reasonable doubt if it "did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999).

The Government presented overwhelming evidence that Evans had unlawfully possessed the gun and ammunition. Several witnesses testified that they saw Evans flee police, the gun was found near his route soon after, the gun was dry despite recent rain, and police found matching ammunition in a man's jacket hanging in Evans's closet. Because of this overwhelming evidence, any reference to Evans's prior escape conviction and

18

its classification as a violent crime did not contribute to the convictions for possession of a firearm and ammunition. *See Neder*, 527 U.S. at 15. Thus, any error was harmless, and Evans is not entitled to relief on this ground.[16]

   2. *Old Chief*

The Supreme Court held in *Old Chief* that the Government may not introduce the "name or nature" of a prior felony conviction in a § 922(g)(1) case when such information would tend to "lure a juror into a sequence of bad character reasoning" about a defendant who had stipulated to his felon status. 519 U.S. at 185. In that case, the defendant had been charged with assault with a dangerous weapon, using or carrying a firearm during the commission of a violent crime, and being a felon in possession of a firearm. *Id.* at 174. He had offered to stipulate that he had been convicted of a crime punishable by imprisonment of more than one year, but the Government refused. *Id.* at 175-77. Thus, the district court allowed evidence that the defendant had been convicted for assault causing serious bodily injury, for

_____

[16] The Fourth Circuit has not decided whether the harmless-beyond-a-reasonable-doubt standard applies to § 2255 motions, or whether the less stringent standard used for motions under 18 U.S.C. § 2254 applies. *See United States v. Owen*, 407 F.3d 222, 229 (4th Cir. 2005). Under the § 2254 standard, a constitutional error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *See id.* The Court finds that the error alleged here was harmless under either standard.

which he had been sentenced to five years in prison.  *Id.* at 177.

Finding that the district court had erred, the Supreme Court noted that unfair prejudice from admitting the name or nature of a previous offense "will vary from case to case." *Old Chief*, 519 U.S. at 185.  But "[w]here a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious." *Id.* On the other hand,

> a prior offense may be so far removed in time or nature from the current gun charge and any others brought with it that its potential to prejudice the defendant unfairly will be minimal.  Some prior offenses, in fact, may even have some potential to prejudice the Government's case unfairly.  Thus an extremely old conviction for a relatively minor felony that nevertheless qualifies under the statute might strike many jurors as a foolish basis for convicting an otherwise upstanding member of the community of otherwise legal gun possession.

*Id.* at 185 n.8.

Because he stipulated that he had been convicted of escape, Evans argues that *Old Chief* bound the Court not to repeat the nature of this offense but to instruct the jury only that he had been convicted of a crime that satisfied an element of the body armor statute.  Mem. in Supp. of Mot. to Vacate 13.  He contends that the Government breached the stipulation in its closing argument -- and unduly prejudiced his defense on all counts --

by describing his escape conviction as "a crime of violence."
*Id.* 16-17.

Evans's argument is not persuasive.  In *Old Chief*, the
defendant's prior conviction was for an offense very similar to
the charged crimes, and his five-year sentence suggested that
the prior conviction was a serious felony.  *See Old Chief*, 519
at 174, 177.  By contrast, the jury in Evans's case learned that
he had been previously convicted of a very different crime
(escape) for which he had received only 45 days incarceration.
*See* Trial Tr. 179, March 28, 2007.  This minimal sentence
suggested a "relatively minor felony."  *See Old Chief*, 519 at
185 n.8.  Because the prior offense was "so far removed in time
[and] nature" from the charges Evans faced at trial, any
prejudice to Evans was minimal.  *Id.*  Moreover, the jury did not
learn details of any predicate offense under 18 U.S.C. § 922 --
only that Evans had been convicted of a crime punishable by a
prison sentence of more than one year.  *See* Trial Tr. 180, March
28, 2007.  Thus, Evans has shown nothing that would have
"lure[d] a juror into a sequence of bad character reasoning,"
*see Old Chief*, 519 U.S. at 185, and the Court will deny relief
on this claim.

D. Use of the 1994 Convictions to Enhance Evans's Sentence

At sentencing, the Court found that Evans was an armed
career criminal because of four prior convictions, including the

June 17, 1994 federal conviction for conspiracy to possess with intent to distribute cocaine, and the November 18, 1994 state conviction for possession with intent to distribute heroin. *See* Sentencing Tr. 13:5-10, Oct. 19, 2007.

Evans argues that these two convictions were not "committed on occasions different from one another," as required to enhance his sentence under the ACCA. Mem. in Supp. of Mot. to Vacate 17-18. The Government counters that (1) Evans has procedurally defaulted this claim, and (2) the offenses constituted two separate crimes because they involved different elements and were proven by different evidence.[17]   ECF No. 67 at 31-35.

A defendant's prior crimes are distinct predicate offenses under the ACCA if "each of the prior convictions arose out of a *separate and distinct criminal episode*." *Letterlough*, 63 F.3d at 335 (emphasis in original) (internal citation and quotation marks omitted). In making this determination, courts consider whether (1) "the offenses arose in different geographic

---

[17] "The ACCA is a sentencing enhancement intended to punish recidivism." *United States v. Letterlough*, 63 F.3d 332, 334 (4th Cir. 1995). Under the statute, a defendant is subject to a sentencing increase from a 10-year maximum to a 15-year minimum if he has been convicted of violating 18 U.S.C. § 922(g) and "has three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from another." *Id.*; 18 U.S.C. § 924(e). "'Occasions' are 'those predicate offenses that can be isolated with a beginning and an end -- ones that constitute an occurrence unto themselves.'" *United States v. Boykin*, ---F.3d---, 2012 WL 627893, at *3 (4th Cir. 2012) (*citing Letterlough*, 63 F.3d at 335).

locations," (2) "the nature of each offense was substantively different," (3) each offense involved different victims or criminal objectives, and (4) the defendant had the opportunity, after committing the "first-in-time offense," to "make a conscious and knowing decision to engage in the next-in-time offense." *United States v. Leeson*, 453 F.3d 631, 640 (4th Cir. 2006). "[I]f any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes." *Letterlough*, 63 F.3d at 336. "In other words, it does not matter for sentencing purposes if the several crimes are part of a larger criminal venture, as long as each constitutes, by itself, a 'complete and final transaction.'" *United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir. 1998).

Had Evans not procedurally defaulted this claim,[18] it would fail on the merits: his two 1994 convictions were separate offenses under the ACCA. Although Evans may consider these crimes "part of a larger criminal venture," each was a "complete and final transaction" with a beginning and an end. *See Hobbs*, 136 F.3d at 388; *Boykin*, 2012 WL 627893, at \*3. The federal conviction related to Evans's conspiracy to obtain and distribute cocaine before April 1992, when he was indicted on

---

[18] Evans has neither argued cause for his default and resulting prejudice, nor shown that he is actually innocent of the predicate offenses. *See supra* note 17.

federal charges.  *See* PSR ¶ 42; Mem. in Supp. of Mot. to Vacate 18; ECF No. 67 at 32.  The state conviction related to Evans's actions some eight months later, when police found him leaving a Baltimore City stash house.  *See* PSR ¶ 40.  The temporal break provided Evans the opportunity to "make a conscious and knowing decision" to engage in further drug activity.[19]  The Court "cannot disregard the additional criminal activity simply because the [G]overnment allowed [Evans] to engage in it" by not arresting him on the federal charges sooner.  *See Letterlough*, 63 F.3d at 337.  Thus, the Court will deny Evans relief on this claim.

E. Use of the 2001 Conspiracy Conviction to Enhance Evans's
   Sentence

Evans argues alternatively that he is actually innocent of his armed career criminal status because his 2001 drug conspiracy conviction is a misdemeanor -- not a felony -- under Maryland law and, thus, does not qualify as a serious drug

---

[19] *See Leeson*, 453 F.3d at 640.  "[T]hat the events occurred within a short period of time does not dictate a result that the offenses occurred on one occasion."  *United States v. Williams*, 187 F.3d 429, 431 (4th Cir. 1999) (10 or 15 minutes between assaults was sufficient for the defendant to "reflect and desist").  *See also United States v. Taft*, 250 F. App'x 581, 582 (4th Cir. 2007) (per curiam) (drug sales in the same location and only two weeks apart were separate crimes under the ACCA, even though the defendant argued that the transactions were part of a single conspiracy); *Letterlough*, 63 F.3d at 337 (drugs sales to the same undercover officer, about 90 minutes apart, took place on different occasions).

offense under the ACCA.  ECF No. 63 at 5-7.  Because the escape

conviction did not constitute a violent crime, *see supra* Part

II.A, Evans argues that he had only two predicate offenses under

the ACCA -- one fewer than necessary to enhance his sentence for

being an armed career criminal.  *Id.* at 12.  He further contends

that his trial counsel provided ineffective assistance of

counsel for not challenging the use of the escape and state drug

conspiracy convictions to enhance his sentence.  *Id.* at 13-14.

Evans's argument is without merit.  First, Evans has not

shown that his attorney provided ineffective assistance of

counsel.  Because it was commonly accepted before *Chambers* that

every escape conviction was a violent crime, Evans's attorney

was not unreasonable in assenting to the Court's use of that

conviction to enhance Evans's sentence.  *See supra* note 8.  As

for the 2001 conspiracy conviction, the record belies Evans's

assertion that his attorney did not challenge its consideration

at sentencing.  *See* Sentencing Tr. 17:10-38:14, 46:17-52:7, Oct.

19, 2007.  Accordingly, Evans has not shown that his attorney's

performance was deficient.[20]

---

[20] *See Strickland*, 466 U.S. at 686, 689.  Although Evans's
attorney challenged the 2001 conspiracy conviction on a slightly
different ground -- that Evans had not been involved in
manufacturing, distribution, or possession of drugs -- the
argument Evans now presents is without merit, as discussed
*infra*.  Accordingly, Evans cannot show that he was prejudiced by
his attorney's failure to raise it.  *See id.* at 694.

Second, the 2001 conspiracy charge was a serious drug offense under the ACCA. A serious drug offense need not be a felony under state law if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," and is punishable by 10 years or more in prison.[21] "Congress intended the sentencing enhancements of section 924 to apply to those who have engaged in certain specific conduct, regardless of the label attached to that conduct by state law." *United States v. Brandon*, 247 F.3d 186, 196 (4th Cir. 2001). Although conspiracy is considered a misdemeanor under Maryland law,[22] Evans's conviction qualified as a serious drug offense under the ACCA: Evans faced 20 years in prison for his conviction for conspiracy to distribute cocaine.[23]

---

[21] 18 U.S.C. § 924(e). Because this provision refers to controlled substances "as defined in section 102 of the Controlled Substances Act" (the "CSA"), Evans mistakenly assumes that the CSA also determines what constitutes a serious drug offense. *See* ECF No. 63 at 6. But the CSA does not use that term. Its definition of "felony," 21 U.S.C. § 802(13), is inapposite, because the ACCA does not reference that provision.

[22] *See Johnson v. State*, 766 A.2d 93, 94 (Md. 2001).

[23] A person convicted of conspiracy under Maryland law faces the maximum punishment provided for the offense he conspired to commit. *Johnson*, 766 A.2d at 94 (internal citation omitted). The maximum penalty for possession with intent to distribute cocaine was -- and remains -- 20 years in prison. Md. Code 1957, Art. 27, § 286(b)(1), *superseded in 2002 by* Md. Code Ann., Crim. Law § 5-608(a); *Johnson v. State*, 749 A.2d 769, 772 (Md. Ct. Spec. App. 2000).

26

F. Enhancing Evans's Sentence Because of Prior Offenses Not
   Alleged in the Indictment

Evans contends that the Court should not have enhanced his
sentence on the basis of his prior convictions because none of
them was alleged in the indictment or submitted to the jury.
Mem. in Supp. of Mot. to Vacate 19-24.  The Government counters
that (1) Evans has procedurally defaulted this claim, and (2)
the Government neither had to plead the facts of the prior
convictions in the indictment nor prove them beyond a reasonable
doubt at trial.  ECF No. 67 at 36.

Had Evans not procedurally defaulted this claim,[24] the
argument would still have been unavailing.  "[P]rior convictions
need not be treated as an element of the offense" and found by a
jury to be used to enhance a defendant's sentence.[25]  Thus, Evans
is not entitled to relief on this claim.

G. Certificate of Appealability

A certificate of appealability ("COA") must issue before a
petitioner may appeal the Court's decision in a 28 U.S.C. § 2255
case.  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA

---

[24] *See supra* note 17.

[25] *See James v. United States*, 550 U.S. 192, 214 n.8 (2007).  *See
also United States v. Roberts*, 166 F. App'x 80, 83-84 (4th Cir.
2006) (rejecting defendant's argument that "prior convictions
used to designate him as an Armed Career Criminal were required
to be admitted by him or found by a jury"); *United States v.
Cheek*, 415 F.3d 349, 350 (4th Cir. 2005) (same).

may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v.Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted). Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because -- other than Evans's claim that he is actually innocent of the body armor conviction -- Evans has not made a substantial showing of the denial of his constitutional rights, this Court will not issue a COA.

III. Conclusion

For the reasons stated above, Evans's motion to vacate, set aside, or correct sentence will be granted in part and denied in part.

_____3/28/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge

28